PAULINUS NWOSU                          *       IN THE
31 Terron Court
Parkville, MD 21234                     *       CIRCUIT COURT

    *Plaintiff,*                      *       OF MARYLAND FOR

vs.                                     *       BALTIMORE COUNTY

MIDLAND FUNDING, LLC                    *       Case No. _____
% Corporation Service Company
Ste. 400                                *
2711 Centerville Road
Wilmington, DE 19808                    *

    Serve on:                          *

    CSC-Lawyers Incorporating          *
    Service Company
    7 St. Paul St., Ste. 1660          *
    Baltimore, MD 21202
                                       *

*and*                                   *

MIDLAND CREDIT                          *
MANAGEMENT, INC.
500 West First                         *
Hutchinson, KS 67501

    Serve on:                          *

    CSC-Lawyers Incorporating          *
    Service Company
    7 St. Paul St., Ste. 1660          *
    Baltimore, MD 21202
                                       *

*   *   *   *   *   *   *   *   *   *   *   *   *

RECEIVED AND FILED
2013 FEB 14 P 1: 40
CLERK OF CIRCUIT COURT
BALTIMORE COUNTY

LAW OFFICES OF
E. DAVID HOSKINS
HAMILL ROAD, STE. 362
BALTIMORE, MD 21210
410-662-6500

1

## COMPLAINT AND DEMAND FOR JURY TRIAL

Now comes Paulinus Nwosu, by and through his attorneys, E. David Hoskins, Max F. Brauer and The Law Offices of E. David Hoskins, LLC, and for his Complaint against Defendants, Midland Funding, LLC and Midland Credit Management, Inc., alleges and states as follows:

### PRELIMINARY STATEMENT

1.    This is an action for actual and statutory damages for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. (hereinafter "FDCPA"); the Maryland Consumer Debt Collection Act, Md. Code Ann., Com. Law, § 14-201, et seq. (hereinafter "MCDCA"); and the Maryland Consumer Protection Act, Md. Code Ann., Com. Law, § 13-101, et seq. (hereinafter "MCPA").

2.    Plaintiff Paulinus Nwosu alleges that the collection practices of Defendants violate the FDCPA, MCDCA and MCPA in their illegal efforts to collect a consumer debt.

3.    The FDCPA regulates the behavior of collection agencies attempting to collect a debt on behalf of another. In enacting the FDCPA, the United States Congress found that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). Congress also found that existing laws and procedures for redressing debt collection activities were inadequate to protect consumers. 15 U.S.C. § 1692(b).

LAW OFFICES OF
E. DAVID HOSKINS
HAMILL ROAD, STE. 362
BALTIMORE, MD 21210
410-662-6500

2

4. Congress enacted the FDCPA to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote uniform State action to protect consumers against debt collection abuses. 15 U.S.C. § 1692(e).

5. The FDCPA is a comprehensive statute that prohibits a catalog of activities in connection with the collection of debts by third parties. The FDCPA imposes civil liability on any person or entity that violates its provisions and establishes general standards of debt collector conduct, defines abuse, and provides for specific consumer rights. 15 U.S.C. § 1692k. The operative provisions of the FDCPA declare certain rights to be provided to or claimed by debtors, forbid deceitful and misleading practices, prohibit harassing and abusive tactics, and proscribe unfair or unconscionable conduct, both generally and in a specific list of disapproved practices.

6. The FDCPA is a strict liability statute that provides for actual or statutory damages upon the showing of one violation. The Fourth Circuit and other federal courts have held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of the "least sophisticated consumer." *United States v. Nat'l Fin. Services, Inc.*, 98 F.3d 131 (4th Cir. 1996); *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993); *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168 (11th Cir. 1985); *Graziano v. Harrison*, 950 F.2d 107 (3rd Cir. 1991); *Swanson v. Southern Oregon Credit Serv., Inc.*, 869 F.2d 1222 (9th Cir.

3

1988). The purpose of the least-sophisticated consumer standard "is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Nat'l Fin. Services, Inc.*, 98 F.3d at 136 (quoting *Clomon v. Jackson*, 988 F.2d at 1318).

7. The FDCPA is a remedial statute that is construed liberally in favor of the debtor. *See, e.g., Garcia-Contreras v. Brock & Scott, PLLC*, 775 F. Supp.2d 808 (M.D.N.C. 2011); *Sprinke v. SB&C, Ltd.*, 472 F. Supp. 2d 1235 (W.D. Wash. 2006); *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162 (9th Cir. 2006); *Johnson v. Riddle*, 305 F.3d 1107 (10th Cir. 2002).

8. To prohibit abuses by debt collectors, the FDCPA, at 15 U.S.C. § 1692e, provides that a debt collector may not use "any false deceptive, or misleading representation or means in connection with the collection of any debt." In addition, the FDCPA at 15 U.S.C. § 1692f provides that a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.

9. The MCDCA prohibits debt collectors from utilizing threatening or underhanded methods in collecting or attempting to collect a delinquent debt. Md. Code Ann., Com. Law §§ 14–201 to 14–204. Specifically, the MCDCA states that a "person collecting or attempting to collect an alleged debt arising out of a consumer transaction," *id.* § 14–201(b), may not "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist." *Id.* § 14–202(8).

10. The Maryland Consumer Protection Act ("MCPA") prohibits "unfair or deceptive trade practices," Md. Code Ann., Com. Law § 13–301, and expressly

LAW OFFICES OF
E. DAVID HOSKINS
HAMILL ROAD, STE. 362
BALTIMORE, MD 21210
410-662-6500

4

designates as "unfair or deceptive trade practices" those that constitute any violation of the MCDCA. *Id.* § 13–301(14)(iii).

## JURISDICTION AND VENUE

11.   The Circuit Court of Maryland has subject matter jurisdiction over the MCDCA and MCPA claims pursuant to Md. Code Ann., Cts. & Jud. Proc. § 1-501. The Circuit Court of Maryland has subject matter jurisdiction over claims brought under the FDCPA pursuant to 15 U.S.C. § 1692k(d) which provides that an action to enforce may be brought in federal court as well in any state court of competent jurisdiction.

12.   The Circuit Court of Maryland has personal jurisdiction over each Defendant pursuant to Md. Code Ann., Cts. & Jud. Proc. §§ 6-102; 6-103(b)(1) and (2). Defendants can be served with process in Maryland and regularly transact business in Baltimore City, Maryland as part of their debt collecting activities. As alleged herein, Defendants have caused tortious injury in the State of Maryland by acts or omissions relating to debt collecting activities that have occurred in the State of Maryland.

13.   The Circuit Court for Baltimore County is the proper venue pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-201(b) because there is no single venue applicable to all defendants under § 6-201(a) and the cause of action arose in Baltimore County.

LAW OFFICES OF
E. DAVID HOSKINS
HAMILL ROAD, STE. 362
BALTIMORE, MD 21210
410-662-6500

## PARTIES

14.  Plaintiff, Paulinus Nwosu, is a "consumer" as defined in 15 U.S.C. § 1692a(3) of the FDCPA, as he is a natural person improperly sued in the attempt to collect a consumer debt allegedly owed on a Chase Bank USA, N.A. credit card used for personal, family, or household purposes. Paulinus Nwosu is a "person" as that term is defined by the MCDCA and the MCPA.

15.  Defendant Midland Funding, LLC is a foreign limited liability company. Midland Funding, LLC is registered to do business in Maryland and is licensed as a debt collector in Maryland. Midland Funding, LLC is regularly engaged, for profit, in the collection of debts allegedly owed by consumers, which it purchases after these debts have gone into default. Midland Funding, LLC uses the United States Mail in furtherance of their collection of debts alleged to be due another. During 2012, Midland Funding, LLC has retained counsel to file about 10,786 lawsuits in the state District Court of Maryland.

16.  Midland Funding, LLC claims to have no employees and conducts its debt collecting activities through an agent, Defendant Midland Credit Management, Inc.

17.  Defendant Midland Credit Management, Inc. is a foreign corporation. Midland Credit Management, Inc. is registered to do business in Maryland and is licensed as a debt collector in Maryland. Midland Credit Management, Inc. is a company engaged in the business of collecting debts alleged to be due another in the State of Maryland, and uses the United States

LAW OFFICES OF
E. DAVID HOSKINS
HAMILL ROAD, STE. 362
BALTIMORE, MD 21210
410-662-6500

Mail in furtherance of their collection of debts alleged to be due another. Midland Credit Management, Inc. uses the United States Mail in furtherance of its collection of debts alleged to be due another.

18.    Midland Credit Management, Inc. hired Lyons, Doughty & Veldhuis, P.C. ("LDV") to initiate a lawsuit against Plaintiff Paulinus Nwosu in an effort to collect a debt allegedly owed by Plaintiff to Chase Bank USA, N.A.

19.    At all relevant times Defendants Midland Funding, LLC and Midland Credit Management acted as a "debt collector" within the meaning of 15 U.S.C. § 1692a(6) of the FDCPA. Defendant Midland Funding, LLC is not a creditor of Plaintiff, but rather is a debt buyer attempting to collect a consumer debt in default that it alleges is owed by Plaintiff. Midland Credit Management, Inc. regularly collect or attempt to collect, directly or indirectly, debts asserted to be owed or due another.

20.    At all relevant times Defendants Midland Funding, LLC and Midland Credit Management, Inc. acted as a "collector" and "person" as those terms are defined by Md. Code Ann., Com. Law, § 14-201(b) of the MCDCA.

21.    The acts of Midland Funding, LLC and Midland Credit Management, Inc. alleged herein were performed by their respective employees acting within the scope of their actual or apparent authority.

22.    At all relevant times each Defendant was the principal, agent, partner, affiliate, successor in interest or predecessor in interest of some or all of the other defendants, and was engaged with some or all of the other defendants

LAW OFFICES OF
E. DAVID HOSKINS
HAMILL ROAD, STE. 362
BALTIMORE, MD 21210
410-662-6500

in a joint enterprise for profit, and bore such other relationships to some or all of the other defendants so as to be liable for their conduct with respect to the matters alleged below. Each Defendant acted pursuant to and within the scope of the relationships alleged above, that each defendant knew or should have known about, and authorized, ratified, adopted, approved, controlled, aided and abetted the conduct of all other defendants.

## ALLEGATIONS APPLICABLE TO ALL COUNTS

### A.   *The District Court of Maryland Process.*

23.    The District Court of Maryland was created by an amendment to the Maryland Constitution and came into existence on July 5, 1971. In civil cases the District Court has exclusive jurisdiction in claims for amounts up to $5,000 and concurrent jurisdiction with the Circuit Courts in claims for amounts above $5,000 but less than $30,000.

24.    The District Court is a statewide court with 34 locations in 12 districts, and a staff including 107 judges. The Court hears disputes relating to landlord-tenant matters, civil claims and criminal charges.

25.    The workload of the District Court has seen tremendous growth since its inception in 1971. In its first year, the Court processed just under 800,000 cases; today, more than two million cases are filed annually.

26.    Most debt collection lawsuits are filed in the District Court and, far too often, result in default judgments in favor of the party bringing the lawsuit when the defendant is unable to afford legal representation and fails to appear

LAW OFFICES OF
E. DAVID HOSKINS
HAMILL ROAD, STE. 362
BALTIMORE, MD 21210
410-662-6500

8

and defend the action.

27.     Statistics published for Fiscal Year 2010 show that of the 300,453 total judgments entered, 247,435 (or roughly 82%) were not contested.

28.     The practice and procedures relating to the Maryland District Courts are established in Title 3 of the Maryland Rules.

29.     In the typical collection case, a defendant has fifteen days after being served with the summons and complaint to file a Notice of Intention to Defend explaining why he or she should not be required to pay the money the complaint alleges is owed. If a Notice of Intention to Defend is not filed, a streamlined process exists for obtaining a judgment based upon an affidavit.

30.     Maryland Rule 3-306 governs this process and allows the plaintiff in a collection action to include a demand for judgment on affidavit with the complaint.

**B.     *Debt Buyers Lack the Evidence Required by Rule 3-306.***

31.     One outgrowth of the global financial crisis has been an increase in the volume of accounts that are sold to debt buyers such as Midland Funding, LLC. Such sales occur only after the original creditor has made the business decision to sell all right, title and interest in the account, rather than outsource the collection or pursue the collection themselves. Thus, when a debt buyer is involved, the original creditor has already decided that the account is not worth pursuing, which is why the accounts are sold for pennies on the dollar.

32.     Debt buyers frequently lack the documentation to prove the terms

LAW OFFICES OF
E. DAVID HOSKINS
HAMILL ROAD, STE. 362
BALTIMORE, MD 21210
410-662-6500

9

and conditions of underlying obligation, and also lack the proof necessary to show the entire chain of assignment of the debt. Once the original creditor sells the account for pennies on the dollar, it does not want to be bothered with it again because it no longer has any financial interest in the account. For this reason, almost every agreement between original creditor and initial debt buyer purchaser (and between the original debt buyer purchaser and each subsequent assignee) is made without representations and warranties, and without recourse.

33.  The debt buyers have adopted a business model, pursuant to which they buy large numbers of charged off consumer accounts for pennies on the dollar and then file lawsuits without first conducting a proper investigation into whether a legal basis exists for pursuing a claim. Under this approach cases are all too often: 1) filed against a person who is not the debtor; 2) filed outside the applicable statute of limitations; and 3) filed in an improper venue.

34.  The Court of Appeals of Maryland concluded that the overall lack of proof in debt buyer cases often leads to dubious judgments entered by default, and on September 8, 2011, clarified the rules required by amending Rule 3-306. In the words of the Hon. Alan Wilner in his report to the Maryland Court of Appeals:

> The problem, which has been well documented by judges, the few attorneys who represent debtors, and the Commissioner of Financial Regulation, is that the [debt buyer] plaintiff often has insufficient reliable documentation regarding the debt or the debtor and, had the debtor challenged the action, he or she would have prevailed. In many instances, when a challenge is presented, the case is dismissed or judgment is denied. In

LAW OFFICES OF
E. DAVID HOSKINS
HAMILL ROAD, STE. 362
BALTIMORE, MD 21210
410-662-6500

10

thousands of instances, however, there is no challenge, and judgment is entered by default.

35. Judge Wilner's observation was validated by the industry itself. Specifically, in a January 19, 2011, letter to the Rules Committee, industry representative ACA International stated its concern about the requirement that a debt buyer must provide the court with "a certified or otherwise properly authenticated photocopy of original of certain documentation establishing proof the consumer debt at issue existed."

36. The reason the industry opposed the requirement of "proof the consumer debt at issue existed" is because, in their own words:

> The above documentation is often unattainable for a variety of reasons, the most important of which is that the original creditor no longer has the information or did not have it when selling an account or turning the account over for collection. Particularly in the context of credit cards, financial institutions are not required under federal law to maintain this type of information beyond two years.

37. The argument presented by the industry was, in essence, that (1) because the original creditors do not have the documentation; and (2) because federal law does not require that the original creditors keep their records; therefore (3) the debt buyer industry should not be required to comply with the same rules of evidence that govern disputes of every other litigant who comes before the Court. No other type of plaintiff can successfully sue for breach of contract without offering certified or otherwise properly authenticated evidence. Yet, this is precisely what is attempted every day by debt buyers, such as Midland

LAW OFFICES OF
E. DAVID HOSKINS
HAMILL ROAD, STE. 362
BALTIMORE, MD 21210
410-662-6500

11

Funding, LLC and its attorneys.

38.   The amendments to Rule 3-306 that apply to new complaints filed after January 1, 2012, clarified the evidentiary requirements that a debt buyer must meet when seeking a judgment on affidavit.

a.     Rule 3-306(c) provides general requirements for all plaintiffs seeking judgment on affidavit. Some of its requirements include that the affidavit: (1) be made on personal knowledge; (2) set forth such facts as would be admissible in evidence; (3) show affirmatively that the affiant is competent to testify to the matters stated in the affidavit.

b.     Rule 3-306(d) provides additional rules for claims that arise from consumer debt and the plaintiff is not the original creditor. Under Rule 3-306(d) the debt buyer must:

i.     Prove the existence of the debt by a certified or otherwise properly authenticated photocopy or original of at least one of the following: (A) a document signed by the defendant evidencing the debt or the opening of the account; (B) a bill or other record reflecting purchases, payments, or other actual use of a credit card or account by the defendant; or (C) an electronic printout or other documentation from the original creditor establishing the existence of the account and showing purchases, payments, or other actual use of a credit card or account by the defendant;

ii.     In certain cases, prove the terms and conditions to which the consumer debt was subject, by producing a certified or otherwise

LAW OFFICES OF
E. DAVID HOSKINS
HAMILL ROAD, STE. 362
BALTIMORE, MD 21210
410-662-6500

12

properly authenticated photocopy or original of the document actually applicable to the consumer debt at issue;

   iii.   Prove that it owns the consumer debt at issue by providing a chronological listing of the names of all prior owners of the debt and the date of each transfer of ownership of the debt, beginning with the name of the original creditor; and a certified or other properly authenticated copy of the bill of sale or other document that transferred ownership of the debt to each successive owner. Specifically, the committee note to Rule 3-306 requires that the Bill of Sale or other document provide the general terms of the ownership transfer and the document's specific reference to the debt sued upon;

   iv.   Identify the nature of the debt or account by including in the affidavit the following information: (A) the name of the original creditor; (B) the full name of the defendant as it appears on the original account; (C) the last four digits of the social security number for the defendant appearing on the original account, if known; (D) the last four digits of the original account number; and (E) the nature of the consumer transaction, such as utility, credit card, consumer loan, retail installment sales agreement, service, or future services; and

   v.   Provide information relating to any charge-off of the account and an itemization of all money claimed by the debt buyer.

   39.   Proof of these items has always been required to obtain a judgment. The amendment was put in place to provide an evidentiary checklist for practitioners and judges and provide protection to debtors who do not challenge

LAW OFFICES OF
E. DAVID HOSKINS
HAMILL ROAD, STE. 362
BALTIMORE, MD 21210
410-662-6500

13

or defend the claims from having a judgment entered by default that is not supported by legally sufficient evidence establishing the plaintiff's entitlement to relief and damages.

### C.   Defendants Engage in Deceptive and Unfair Debt Collection.

40.   On or about July 25, 2012, Midland Funding, LLC filed a complaint seeking a judgment in the amount of $4,905.28 against Paulinus Nwosu for allegedly failing to pay a debt owed to Chase Bank USA, N.A. This alleged debt will hereinafter be referred to as the "subject debt."

41.   The subject debt is a "debt" as that term is defined by 15 U.S.C. § 1692a(5) of the FDCPA, as it allegedly arose out of a credit card account that was used primarily for personal, family, or household purposes.

42.   The subject debt is a "consumer transaction" as that term is defined by Md. Code Ann., Com. Law, § 14-201(c) of the MCDCA.

43.   In support of the claim of ownership of the subject debt, Midland Funding, LLC filed a single Bill of Sale, with two redactions covering approximately one-quarter of the document.

44.   The "Bill of Sale" attached to the Complaint is legally insufficient to prove ownership of the debt because it fails to mention Paulinus Nwosu or his alleged account anywhere in the document. In addition, the Bill of Sale is a fragment of a larger document because it references a "Credit Card Purchase Agreement" and "Final Data File" not attached to the Complaint, and therefore

LAW OFFICES OF
E. DAVID HOSKINS
HAMILL ROAD, STE. 362
BALTIMORE, MD 21210
410-662-6500

14

Midland Funding, LLC did not provide the general terms of the Bill of Sale. The document also fails to establish that any account allegedly relating to Paulinus Nwosu was included in these additional documents.

45.     The Complaint also included a "Supplemental Affidavit of Tanya Johnson." This affidavit failed to comply with the requirements of Rule 3-306 in several respects.

a.     The affidavit did not assert that Tanya Johnson had personal knowledge about Chase Bank USA, N.A. or the debt. Rather, the only personal knowledge asserted was personal knowledge of the account records of Midland Credit Management:

> I am employed as a Legal Specialist and have access to pertinent account records for Midland Credit Management, Inc. ("MCM"), servicer of this account on behalf of plaintiff Midland Funding LLC. . . . I am a competent person over eighteen years of age, and make the statements herein based upon personal knowledge of those account records maintained on plaintiff's behalf.

See **Exhibit 1**, ¶ 1.

b.     Since the affidavit was not based upon personal knowledge of the business records of Chase Bank USA, N.A. it failed to present admissible evidence that (1) Paulinus Nwosu was legally obligated to pay the alleged debt to Chase Bank USA, N.A.; (2) that the alleged debt had not been paid, and (3) the amount, if any, still owed on the alleged debt.

c.     Tanya Johnson was not an employee of the original creditor and could not have personal knowledge of the procedures under which the

LAW OFFICES OF
E. DAVID HOSKINS
HAMILL ROAD, STE. 362
BALTIMORE, MD 21210
410-662-6500

15

original creditor created the records.

46. All documents attached to the Complaint, including the Bill of Sale were not certified or properly authenticated as required by Rule 3-306(d). Specifically, Midland Funding, LLC provided no affidavit from the original creditor certifying or properly authenticating these documents.

47. By basing its claim on these incomplete and unauthenticated hearsay documents and accompanying false affidavit, Midland Funding, LLC sued Paulinus Nwosu with the hope of obtaining a default judgment when it knew or should have known that it did not possess the evidence necessary to support its claim.

48. Midland Funding, LLC's lawsuit against Paulinus Nwosu was tried on December 13, 2012 and a judgment was entered in favor of Paulinus Nwosu because Midland Funding, LLC could not establish that it owned the subject debt.

49. Midland Funding, LLC's filings and conduct in this case are part of a pattern of practice or conduct designed to obtain affidavit judgments when consumers are deceived into thinking that Midland Funding, LLC and Midland Credit Management has a valid debt collection lawsuit against them.

### D. *Plaintiff Suffered Actual Damages.*

50. As a direct consequence of the acts, practices and conduct of Midland Funding, LLC and Midland Credit Management, Inc., Paulinus Nwosu suffered and continues to suffer from inconvenience, emotional distress, loss of sleep, embarrassment and humiliation.

LAW OFFICES OF
E. DAVID HOSKINS
: HAMILL ROAD, STE. 362
BALTIMORE, MD 21210
410-662-6500

16

## COUNT I

### Violation of the Fair Debt Collection Practices Act
### 15 U.S.C. § 1692, *et. seq.*

51.     Paulinus Nwosu incorporates by reference the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

52.     Midland Funding, LLC and Midland Credit Management, Inc. used false, deceptive, or misleading representations or means in connection with the collection of the subject debt in violation of 15 U.S.C. § 1692e. Midland Funding, LLC filed the complaint against Paulinus Nwosu without certified or otherwise properly authenticated evidence establishing ownership of the alleged debt. The debt collection complaint and the bill of sale attached thereto had a tendency to mislead an unsophisticated consumer into concluding that Midland Funding, LLC was the owner of the subject debt and had standing to sue to collect the subject debt.

53.     Midland Funding, LLC and Midland Credit Management, Inc. used false, deceptive, or misleading representations or means in connection with the collection of the subject debt in violation of 15 U.S.C. § 1692e(2)(A). The debt collection complaint and bill of sale attached thereto, as well as the failure to provide certified or otherwise properly authenticated evidence establishing ownership, falsely represented the character or legal status of the subject debt and had a tendency to mislead an unsophisticated consumer into concluding that Midland Funding, LLC was the owner of the subject debt and had standing to sue

LAW OFFICES OF
E. DAVID HOSKINS
HAMILL ROAD, STE. 362
BALTIMORE, MD 21210
410-662-6500

17

to collect the subject debt.

54.   Midland Funding, LLC and Midland Credit Management, Inc. used deceptive means to attempt to collect the subject debt in violation of 15 U.S.C. § 1692e(10). The debt collection complaint and bill of sale attached thereto, as well as the failure to provide certified or otherwise properly authenticated evidence establishing ownership, were deceptive and had a tendency to mislead an unsophisticated consumer into concluding that Midland Funding, LLC was the owner of the subject debt and had standing to sue to collect the subject debt.

55.   Midland Funding, LLC and Midland Credit Management, Inc. used unfair and unconscionable means to attempt to collect the debt in violation of 15 U.S.C. § 1692f. The debt collection complaint and bill of sale attached thereto, as well as the failure to provide certified or otherwise properly authenticated evidence establishing ownership, had a tendency to mislead an unsophisticated consumer into concluding that Midland Funding, LLC was the owner of the subject debt and had standing to sue to collect the subject debt.

56.   Midland Funding, LLC and Midland Credit Management, Inc. used unfair and unconscionable means to attempt to collect the subject debt in violation of 15 U.S.C. § 1692f(1). The attempt to collect the subject debt was not authorized by law because the debt collection complaint and bill of sale attached thereto, failed to provide certified or otherwise properly authenticated evidence establishing ownership.

57.   The false and deceptive conduct alleged herein was material because

LAW OFFICES OF
E. DAVID HOSKINS
HAMILL ROAD, STE. 362
BALTIMORE, MD 21210
410-662-6300

it had the tendency to mislead an unsophisticated consumer into concluding that Midland Funding, LLC was the owner of the subject debt and had standing to sue to collect the subject debt.

58.    As a direct consequence of the acts, practices and conduct of Midland Funding, LLC and Midland Credit Management, Inc. Paulinus Nwosu suffered inconvenience, emotional distress, loss of sleep, embarrassment and humiliation.

### COUNT II

### Violation of the Maryland Consumer Debt Collection Act
### Md. Code Ann., Com. Law, § 14-201, *et seq*.

59.    Paulinus Nwosu incorporates by reference the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

60.    The subject debt was a debt which was primarily for personal, family, or household purposes and is therefore a "consumer transaction" as that term is defined by the MCDCA.

61.    Midland Funding, LLC and Midland Credit Management, Inc. attempted to enforce a right with knowledge that the right does not exist in violation of Md. Code Ann., Com. Law. § 14-201(8). Midland Funding, LLC and Midland Credit Management, Inc. filed the complaint against Paulinus Nwosu without certified or otherwise properly authenticated evidence establishing ownership of the alleged debt in violation of Maryland law.

62.    As a direct consequence of the acts, practices and conduct of

19

Midland Funding, LLC and Midland Credit Management, Inc., Paulinus Nwosu suffered inconvenience, emotional distress, loss of sleep, embarrassment and humiliation and is therefore entitled to actual damages pursuant to Md. Code. Ann., Com. L. § 14-203 from Defendants.

### COUNT III

### Violation of the Maryland Consumer Protection Act
### Md. Code Ann., Com. Law, § 13-101, et seq.

63.    Paulinus Nwosu incorporates by reference the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

64.    Paulinus Nwosu is a consumer as defined by the CPA, Md. Code Ann., Com. L. § 13-101(c).

65.    Section 13-303(1) of the CPA prohibits unfair or deceptive trade practices in the sale of consumer goods and the extension of consumer credit.

66.    Under § 13-301(14)(iii) of the CPA, unfair or deceptive trade practices also include any violation of the MCDCA.

67.    As a direct consequence of the acts, practices and conduct of Midland Funding, LLC and Midland Credit Management, Inc., Paulinus Nwosu suffered inconvenience, emotional distress, loss of sleep, embarrassment and humiliation and is entitled to actual damages and attorney's fees pursuant to CPA § 13-408.

WHEREFORE, Plaintiff, Paulinus Nwosu, respectfully prays for a judgment against Defendants Midland Funding, LLC and Midland Credit

LAW OFFICES OF
E. DAVID HOSKINS
HAMILL ROAD, STE. 362
BALTIMORE, MD 21210
410-662-6500

Management, Inc. as follows:

      a.     Actual damages pursuant to 15 U.S.C. § 1692k(a)(1); Md. Code.

Ann., Com. Law. § 14-203; and Md. Code Ann., Com. Law § 13-408 in the amount

of $35,000.00;

      b.     Statutory damages of $1,000.00 pursuant to 15 U.S.C. §

1692k(a)(2)(A);

      c.     Costs of litigation and reasonable attorney's fees pursuant to

15 U.S.C. § 1692k(a)(3) and Md. Code Ann., Com. Law § 13-408; and

      d.     For such other and further relief as may be just and proper.

## JURY DEMAND

Paulinus Nwosu hereby demands a trial by jury on all issues in this action,

except for any issues relating to the amount of attorney's fees and litigation costs

to be awarded should Paulinus Nwosu prevail on any of his claims in this action.

Dated: February 12, 2013          Respectfully Submitted,

E. David Hoskins, Esq.
The Law Offices of E. David Hoskins, LLC
Quadrangle Building at Cross Keys
2 Hamill Road, Ste. 362
Baltimore, Maryland 21210
(410) 662-6500 (Tel.)
dhoskins@hoskinslaw.com

LAW OFFICES OF
E. DAVID HOSKINS
HAMILL ROAD, STE. 362
BALTIMORE, MD 21210
410-662-6500

CLERK OF CIRCUIT COURT
BALTIMORE COUNTY
2013 FEB 14 P 1:40
RECEIVED AND FILED

21

Max F. Brauer, Esq.
The Law Offices of E. David Hoskins, LLC
Quadrangle Building at Cross Keys
2 Hamill Road, Ste. 362
Baltimore, Maryland 21210
(410) 662-6500 (Tel.)
maxbrauer@hoskinslaw.com